# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Theresa Coleman, Administratrix of the
Estate of Sara Bryanne Coleman,
Plaintiff Below, Petitioner**

**FILED**

**June 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 12-0665** (Cabell County 06-C-589)

**Patricia Hackney, CNM, RN, and
Mitchell Nutt, M.D.,
Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Theresa Coleman, Administratrix of the Estate of Sara Bryanne Coleman, by counsel J. Franklin Long, Dwight J. Staples, and Gail Henderson-Staples, appeals the Circuit Court of Cabell County's order entered on April 20, 2012, denying the motion for a new trial after a jury verdict in favor of respondents. Respondents Patricia Hackney, CNM, RN and Mitchell Nutt, M.D., by counsel Michael J. Farrell, Tamela J. White, and Allison Carroll Anderson, have filed a responsive brief. Petitioner has filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises from the death of eighteen-year-old Sara Bryanne Coleman. Coleman had a known personal history of obesity and smoking, and had a family history of blood clots, pulmonary embolism, and deep vein thrombosis.  She was prescribed oral contraceptives (LoOvral) by respondents on April 8, 2004, to control symptoms of irregular menses and dysmenorrhea. LoOvral contained 30 mg of estrogen. Coleman was also prescribed Ovcon 50, containing 50 mg of estrogen, on June 29, 2004. On August 16, 2004, Coleman died from a blood clot. Petitioner contends that the blood clot was caused by the oral contraceptives. Respondents contend that the decedent fell on a trampoline two to three days before her death and that this fall led to the fatal blood clot. Respondents state that on August 13, 2004, approximately four weeks after ingesting the last active oral contraceptive pill, the decedent was using a small trampoline meant for a small child when she fell. The decedent complained of injury for two days and requested that her parents take her for medical care, but they refused. Instead, petitioner gave her daughter Neurontin, which was prescribed to petitioner, not the decedent, to treat her pain. The decedent called off work for the two days following the trampoline accident, complaining of severe back pain. The morning of her death, decedent woke

1

her father by telling him she had passed out in the bathroom and had severe shortness of breath, but he did not seek medical care for her at that time. Hours later she was found unresponsive in her bed.

Petitioner filed the instant action alleging medical malpractice on August 15, 2006, against Allan Chamberlain, M.D., and Patricia Hackney, CNM, RN. Both respondents moved to dismiss the action. Petitioner moved to amend the complaint after determining that Mitchell Nutt, M.D., also provided care to the decedent, and an amended complaint adding Dr. Nutt as a party defendant was filed on June 7, 2007. Discovery progressed but numerous delays occurred and the trial was reset multiple times. At a pretrial hearing on July 1, 2010, Dr. Chamberlain's motion for summary judgment was granted in his favor and he was dismissed from the action prior to trial. The case was continued again, and finally went to trial on October 25, 2011. On November 15, 2011, the jury returned a defense verdict. Petitioner moved for a new trial. After a hearing on March 30, 2012, the motion was denied. An order denying the motion was entered on April 20, 2012.

This Court has stated that:

This Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W.Va. 105, 736 S.E.2d 338 (2012).

Petitioner argues that the circuit court erroneously applied West Virginia Code § 55-7-23 retroactively to this case and erroneously instructed the jury regarding this statute. West Virginia Code § 55-7-23 went into effect on July 5, 2005, after respondents prescribed the oral contraceptives to the decedent. This statute limits a health care provider's liability to a patient as a result of the ingestion of prescription drugs approved by the United States Food and Drug Administration. Respondents argue that this code provision should be applied retroactively based on the fact that West Virginia Code § 55-7B-3 is retroactive. The circuit court found that the code provision was indeed retroactive and gave a jury instruction on this statutory provision. However, this Court finds that because the jury found that the defendants did not deviate from the medical standard of care, the jury never reached this issue. Therefore, we decline to address the retroactivity of this code provision as it is unnecessary in this action.

Petitioner alleges several other assignments of error, including that the circuit court erred in granting summary judgment to Allan Chamberlain, M.D. and erred in granting respondents' request for a spoliation instruction, as the instruction offered was not a correct statement of law. Further, petitioner argues that the lower court erred in ruling that petitioner could not introduce testimony concerning a missing medical history form. Petitioner argues that the lower court erroneously granted a directed verdict on informed consent, and that the lower court erroneously denied petitioner the right to present evidence regarding respondents' services provided to the decedent pursuant to their billing records. Additionally, petitioner argues that the circuit court erred in denying petitioner an opportunity to impeach the expert credentials of Respondent

2

Hackney. Finally, petitioner argues that the circuit court erred in allowing respondents to impermissibly strike an African-American juror. As to these assignments of error, our review of the record reflects no clear error or abuse of discretion by the circuit court. The circuit court reviewed each of petitioner's contentions at length. For example, with regard to the issue of informed consent, while the trial court initially ruled this issue would be presented to the jury, it later directed a verdict in respondent's favor on this issue. However, the circuit court explained in detail the reasons for its change of decision as well as the reasons for the timing of the same. With regard to the question of the opportunity to impeach the credentials of Respondent Hackney, the lower court did not limit petitioner's ability to conduct voir dire relating to her status as an expert or her credentials, but it excluded information as to previous claims or lawsuits as irrelevant. Similarly, the circuit court set out its extensive analysis of its rulings on any alleged billing irregularities, the striking of the African-American juror from the jury panel, the claim of spoliation of evidence, and each of the additional issues.

Having reviewed the circuit court's "Order" entered on April 20, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to these assignments of error. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

## IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

THERESA COLEMAN,
Administratrix of the
Estate of Sara Bryanne Coleman

2012 APR 20 P 1: 28

Plaintiff,

vs.

CIVIL ACTION NO. 06-C-589
David M. Pancake, Judge

PATRICIA HACKNEY, CNM, RN and
MITCHELL NUTT, M.D.

Defendants.

### ORDER

On March 30, 2012, came the parties, Plaintiff, Theresa Coleman, Administratrix of the Estate of Sara Bryanne Coleman, by counsel, Gail Henderson-Staples, Dwight J. Staples, and Henderson, Henderson & Staples, LC, and Defendants, Patricia Hackney, CNM, RN, and Mitchell Nutt, M.D., by counsel, Michael J. Farrell and Farrell, White & Legg, PLLC, to be heard on the following Motions:

1. *Plaintiff's Motion for New Trial* (filed November 28, 2011) and *Defendants' Response in Opposition to Plaintiff's Motion for New Trial* (filed January 25, 2012);

2. *Plaintiff's Supplemental Memorandum in Support of Motion for New Trial* (filed March 2, 2012) and *Response on Behalf of Patricia Hackney, CNM and Mitchell Nutt, M.D. in Opposition to Plaintiff's Supplemental Memorandum in Support of Motion for New Trial* (filed March 16, 2012);

3. *Motion on Behalf of Defendants, Patricia Hackney, CNM and Mitchell Nutt, M.D. to Conduct Juror Interviews* (filed December 29, 2011); and

4. *Plaintiff's Motion to Allow Juror Interviews* (filed January 4, 2012).

Upon consideration of the Motions and all responses thereto, as well as the applicable law, and as set forth in detail in the record, the Court FINDS and ORDERS the following:

## PLAINTIFF'S MOTION FOR NEW TRIAL

### I. Factual Overview

Theresa Coleman, mother of Sara Bryanne Coleman, deceased, and Administratrix of Sara Bryanne Coleman's Estate, instituted this action against Patricia Hackney, a Certified Nurse Midwife and Dr. Mitchell Nutt, alleging that the Defendants' care and treatment proximately caused Ms. Coleman's death. Specifically, Plaintiff asserted that the prescription of Lo Ovral and Ovcon 50 lead to a pulmonary embolism resulting in death.

Sara Bryanne Coleman became a patient of the Defendants at United Health Professionals, Inc. on April 8, 2004. She presented with irregular menstrual cycles, dysfunctional uterine bleeding, and dysmenorrhea. The Plaintiff, Theresa Coleman, alleged that she verbally reported a family history of deep vein thrombosis, pulmonary embolism, and blood clotting to Ms. Hackney.

Between April 8, 2004, and Sara Bryanne Coleman's death, Ms. Hackney, in collaboration with Dr. Nutt, gave Sara Bryanne Coleman samples of oral birth control pills, specifically Lo Ovral and Ovcon 50. Ms. Coleman died on August 16, 2004 of a pulmonary thromboembolism, secondary to a deep vein thrombosis which had formed in her left leg.

The Defendants argued that Sara Bryanne Coleman (1) injured herself on a trampoline the weekend she died, and (2) was not on any birth control pills given to her by the Defendants at the time of her death.

## II. Procedural History

The Complaint was filed August 15, 2006. After much pretrial activity and rescheduling of the Trial date, Trial commenced October 25, 2011 and the jury returned a verdict November 15, 2011 in favor of the Defendants.

Ms. Coleman presented nineteen (19) witnesses and the defense presented ten (10). Testifying on behalf of Plaintiff was: Joan Slager, CNM, Dr. Alexander Duncan (pathologist), Dr. Steven Eisinger (Ob/Gyn), Dr. James Kaplan (Chief Medical Examiner), Dr. Randall Tackett (Pharmacology), Patti Hackney, CNM (Defendant), Jason Robinson, RN (fact witness), Tim Coleman (fact witness), Sandra Nestor, RN (fact witness), Tammy Johnson (fact witness), Robert Johnson (forensic economist), Evelyn Douglas (fact witness), Connie Glover (fact witness), Kim Starkey (fact witness), Jennifer Glover (fact witness, by deposition), Theresa Coleman (Plaintiff), Josh Coleman (fact witness) and Ben Coleman (fact witness).

The Defendants presented Dr. Mitchell Nutt (Defendant Ob/Gyn), Lisa Hull (fact witness), Misty Terry Wido (fact witness), Dr. Philip Comp (Hematologist), Dr. Richard Mitchell (Cardiovascular Pathologist), Dr. Paige Hertweck (Pediatric Adolescent Gynecologist), Dr. Kevin Yingling (Pharmacologist), Daniel Selby, CPA (Economist), Dr. David Ayers (family physician, by videotaped deposition), and Dr. Stephen Thomas (Emergency Medicine).

At the close of the evidence, and being charged, the jury deliberated and on the Verdict Form indicated:

> Question No. 1: Do you find from a preponderance of the evidence that the Defendant, Patti Hackney, deviated from the accepted standard of care in connection with the care and treatment of Sara Bryanne Coleman?
>
> It was marked "No."

Question No. 5: Do you find from a preponderance of the evidence that the Defendant, Mitchell Nutt, deviated from the accepted standard of care in connection with the care and treatment of Sara Bryanne Coleman?

It was marked "No."

Pursuant to the instructions set forth in the Verdict Form, given that the Jury answered both of these questions in the negative, the Jury did not need to consider proximate cause, damages or any other issues.

Plaintiff filed this Motion for New Trial on November 28, 2011 and noticed the Hearing for January 30, 2011. Due to the Court's obligation to serve on the West Virginia Supreme Court of Appeals on January 25, 2012 and preparation for that matter, the Hearing had to be reset.

The Defendants filed their Response to the Motion on January 25, 2012. Ms. Coleman subsequently filed a Supplemental Memorandum in Support of the Motion for New Trial on March 2012, and the Defendants filed a Response to Ms. Coleman's Supplemental Memorandum on March 16, 2012. The parties had some difficulty agreeing on a mutually satisfactory date for the Hearing, therefore, the Court wrote the parties and set the matter for March 30, 2012.

### III. Legal Standard For Motion for New Trial

Rule 59 of the West Virginia Rules of Civil Procedure, specifically Rule 59(a), provides the grounds upon which a new trial may be granted:

> A new trial may be granted to all or any of the parties on all or any part of the issues (1) in an action in which there has been a trial by jury for any of the reasons for which new trials have heretofore been granted in actions at law.

Syl. Pt.1 of *Smith v. Cross*, 223 W.Va. 422, 675 S.E.2d 898 (2009) also provides:

> When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict as against the clear weight of the evidence and is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by

substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

In determining whether there is sufficient evidence to support a jury verdict the court should (1) consider the evidence most favorably to the prevailing party; (2) assume that all the conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proven all facts which the prevailing party's evidence tends to prove; and (4) give the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts.

All four of the foregoing factors must be considered in determining whether to award a new trial. Syl.Pt.6, *Smith v. Cross*, 223 W.Va. 422, 675 S.E.2d 898 (2009)(quoting Syl.Pt.5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593(1984)).

The Court must also consider Rule 61 of the West Virginia Rules of Civil Procedure, regarding "Harmless Error:"

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

### IV. *Plaintiff's Assignments of Error and the Defendants' Responses in Opposition to the Same.*

Plaintiff has asserted twelve (12) alleged assignments of error that she argues warrants a new trial. The Defendants responded in opposition to the same.

First, Plaintiff asserted that it was prejudicial error to exclude the expert opinion of Joan Slager, CNM, on the issue of informed consent. The Defendants responded that Plaintiff's claim was erroneous and expressly contradicted by the record.

Second, Plaintiff asserted that it was procedural error to deny Plaintiff an opportunity to impeach the credentials of Patricia Hackney, CNM. The Defendants responded that the Court properly excluded Plaintiff's attempt to impeach Ms. Hackney by introduction of inadmissible evidence.

Third, Plaintiff asserted that it was prejudicial error to deny Plaintiff an opportunity to present evidence on the Defendants' services provided to Sara Bryanne Coleman and their billing for the same. The Defendants responded that the Court properly excluded Plaintiff's expert, Joan Slager, CNM, from offering testimony as to alleged billing irregularities at non-party, United Health Professionals, Inc.

Fourth, it was prejudicial error to allow the Defendants to strike one of two African-Americans from the *venire*. The Defendants responded that the Court did not commit prejudicial error by permitting the Defendants to strike one of two African-American jurors. The Defendants also argued that any prejudice arising from the Court's decision to permit one strike and to reverse the other weighed in favor of the Plaintiff and against the Defendants. Further, Plaintiff failed to preserve this alleged error.

Fifth, Plaintiff asserted that it was prejudicial error to apply W.Va. Code §55-7-23 to the case at bar. The Defendants responded that the Court properly applied W.Va. Code §55-7-23 to this case because (1) it was based upon evidence presented at Trial and the Defendants were entitled to immunity pursuant to W.Va. Code §55-7-23; (2) W.Va. Code §55-7-23 was properly presented to the jury as an affirmative defense; and (3) the Court properly applied W.Va. Code §55-7B-3 and W.Va. Code §55-7-23 when deciding the retroactivity of W.Va. Code §55-7-23.

Sixth, the Plaintiff asserted that it was prejudicial error to grant the Defendants' Motion for Spoliation Instruction. The Defendants responded that the Court properly granted their Motion for Spoliation Instruction as to Ovcon 50.

Seventh, the Plaintiff alleged that the Jury was improperly instructed as to several issues. The Defendants responded that that the jury was instructed in accordance with the laws of West Virginia as follows: (1) the jury was properly instructed as to the spoliation with regard to Ovcon 50; (2) the jury was properly instructed as to the application of W.Va. Code §55-7-23; and (3) that the jury was properly instructed as to the application of the non-malpractice causation instruction.

Eighth, Plaintiff alleged it was prejudicial error to grant summary judgment to the Defendant, Dr. Allan Chamberlain. The Defendants responded that summary judgment was proper as to Dr. Chamberlain and furthermore, the Plaintiff's attempt to seek reversal of the same was untimely, and thus, time-barred.

Ninth, Plaintiff alleged it was prejudicial error to excluded evidence concerning a "missing family history form." The Defendants responded that the Court properly excluded evidence of the same.

Tenth, Plaintiff alleged it was prejudicial error to deny Plaintiff an opportunity to cross-examine Dr. David Ayers as an expert witness. The Defendants responded that this Court properly limited the Plaintiff's attempt to cross-examine Dr. David Ayers in violation of *Rine v. Irisari*, 187 W.Va. 550, 420 S.E.2d 541 (1992).

Finally, the Plaintiff asserted that the jury verdict was plainly wrong and that it constituted a gross miscarriage of justice. The Defendants responded to both assertions by

demonstrating that there was more than sufficient evidence to support the jury verdict and, thus, no basis on which to set aside the same.

### V. The Court's Analysis of Plaintiff's Assignments of Error

#### a. Directed Verdict as to the Issue of Informed Consent.

The original pretrial in this action took place on July 1, 2010. At that Hearing, the Court heard the Defendants' Motion to Exclude the Plaintiff's Claim that the Defendants Failed to Obtain Sara Coleman's Informed Consent to Oral Contraceptive Therapy. At that time, the Court ruled as follows: "Plaintiff may present evidence on her contention that Sara Bryanne Coleman did not give informed consent, as that is a jury issue, and the Defendant may present evidence to the contrary."

Ms. Coleman argued that during the Trial testimony of her expert, Joan Slager, who was also a Certified Nurse Midwife, the Court refused to allow her to give testimony on the issue of informed consent. Plaintiff further asserted that without any notice, this Court reversed its prior ruling and summarily ruled in favor of the Defendants on the issue. The Defendants responded that Ms. Slager testified regarding Ms. Hackney's consent process and the United Health Professionals, Inc. Birth Control Information and Consent Form. The Defendants further argued that Ms. Slager underwent cross-examination by defense counsel about her own informed consent process. Thus, they argued that the Court did not limit Ms. Slager's testimony on the issue.

Thereafter, on November 8, 2011, the Court heard the Defendants' Motion for Directed Verdict and ruled that the informed consent was appropriate in this case and met the standard of care.

The Court now finds that the law is not static, nor is litigation. Both are an ever-evolving process and the parties and the Court must move and bend with them. While this Court does not haphazardly make decisions, sometimes after deliberation or when presented with new facts and arguments, it reverses a prior ruling, modifies a ruling, or must further explain an issue. It is not only a prerogative of the Court, but is incumbent on the Court, especially in cases such as this that have developed over six (6) years, to reassess situations and rulings. The Court first addressed this issue in July 2010, and will not be bound by a non-specific ruling more than a year later after more information was made known to the Court.

In addition, the directed verdict on the issue occurred after Ms. Coleman's case-in-chief, when the Court had heard all of the information. "Once a trial just rules on a motion in limine, that ruling becomes the law of the case unless modified by a subsequent ruling of the Court. A trial court is vested with the exclusive authority to determine when and to what extent an in limine order is to be modified." Syl. Pt. 2, *Adams v. Consol. Rail Corp.*, 213 W.Va. 711, 591 S.E.2d 269 (2003)(quoting Syl. Pt. 4, *Tennant v. Marion Health Care Found.*, 194 W.Va. 97, 459 S.E.2d 374 (1995)). Further, Ms. Slager did, in fact, testify concerning informed consent.

The standard for a directed verdict under Rule 50(a) of the West Virginia Rules of Civil Procedure is as follows:

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the Court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot be under the controlling law maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment.

The West Virginia Supreme Court of Appeals has held that the standard for informed consent in West Virginia is a patient need standard. "A physician has a duty to disclose information to his or her patient in order that the patient may give to the physician an informed consent to a particular medical procedure such as surgery. In the case of surgery, the physician ordinarily should disclose to the patient various considerations including (1) the possibility of the surgery, (2) the risks involved concerning the surgery, (3) alternative methods of treatment, (4) the risks relating to such alternative methods of treatment, and (5) the results likely to occur in the patient remains untreated." *Cross v. Trapp*, 222 W.Va. 261, 294 S.E.2d 446 (1982).

Ms. Coleman asserted that the United Health Professionals, Inc. Birth Control Information and Consent form was not sufficient under West Virginia law because it did not list death as a risk of oral contraceptives, and thus, Sara Bryanne Coleman could not have given her informed consent. Plaintiff also asserted that the consent form did not list any alternative treatments for the medical conditions for which Sara Bryanne Coleman was being treated. Ms. Coleman further argued that Plaintiff's expert, Joan Slager, testified that the consent was for oral contraceptive use to prevent pregnancy, not for Sara Bryanne Coleman's conditions of irregular menstrual cycles, dysfunctional uterine bleeding, and dysmenorrhea.

The Defendants responded first by arguing that Ms. Coleman failed to preserve the issue of informed consent on appeal. "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert the circuit court to the nature of the claimed defect." Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 62 (1996). While Plaintiff's counsel may not have specifically preserved the issue for appeal, the Court finds that it was clear from the arguments presented that Ms. Coleman objected to the Court's ruling, and the reasons were sufficiently stated on record.

The Defendants next argued that the consent obtained by Sara Bryanne Coleman was sufficient, based upon both the United Health Professionals, Inc. Birth Control Information and Consent form and Ms. Hackney's discussion with Sara Bryanne Coleman, including the risks associated with the alternative forms of treatment. The Defendants also argued that Sara Bryanne Coleman signed the United Health Professionals, Inc. Birth Control Information and Consent form, and that there were no witnesses who could counter Ms. Hackney's testimony regarding Sara Bryanne Coleman's consent. Defendants further argued that while death was not listed under "Side-Effects-Major" on the consent form, "blood clots in the legs and lungs" was included.

The Court properly considered the evidence, including the testimony of Plaintiff's experts, Joan Slager, CNM and Dr. Steven Eisinger, Ms. Hackney's testimony, and the consent form signed by Sara Bryanne Coleman. Further, this Court properly ruled that the Defendants were entitled to directed verdict on the issue of informed consent because Ms. Coleman was fully heard on the issue and there was no legally sufficient evidentiary basis for a reasonable jury to find for Ms. Coleman. Regardless of how this Court previously ruled, which was that Ms. Coleman could present evidence of lack of informed consent, the Court heard the evidence at Trial and properly granted the Motion for Directed Verdict in accordance with Rule 50 of the West Virginia Rules of Civil Procedure.

### b. Impeachment of Patricia Hackney, CNM's Credentials.

At the second pretrial in this case on October 6, 2011, the Court heard Plaintiff's Motion in Limine to Exclude Defendants' Supplemental Discovery dated April 30, 2010. This discovery contained information concerning Ms. Hackney's credentials from 2004 to 2011, and the Court denied the Motion. In her Motion for New Trial, Ms. Coleman alleged that despite defense counsel

being permitted to question Ms. Hackney on her credentials, the Court denied her attempt to impeach Ms. Hackney regarding the same. The specific issue at Trial regarding Ms. Hackney's credentials involved an incident from August 2011, just a few months prior to Trial, at St. Mary's Medical Center which resulted in Ms. Hackney having her privileges suspended at St. Mary's Medical Center.

The Court did not limit Ms. Coleman's ability to *voir dire* Ms. Hackney relating to her status as an expert or her credentials. In fact, Plaintiff's counsel, Mr. Staples did question Ms. Hackney regarding her credentials, and the breakdown of her practice percentages. Instead, the Court upheld the previous rulings from July 1, 2010, excluding evidence of other lawsuits or claims because information on previous lawsuits or claims was not relevant to the case, and any probative value would certainly have been outweighed by the prejudicial effect of the same.

It should also be noted that in July 2010, when faced with the Motions in Limine to Exclude Evidence of Other Claims or Lawsuits, Ms. Coleman responded that she did not intend to introduce any such evidence.

### c. Evidence of United Health Professionals, Inc. Billing Statements

At the first pretrial, July 1, 2010, the Court heard the Defendants' Motion to Prohibit any Testimony Regarding An Alleged Billing Irregularity at United Health Professionals, Inc.. The Court denied the motion in part and granted it in part. The Court ruled: "This motion is denied in part and granted in part. Reference to the billing code used by Defendant Patti Hackney is relevant and admissible. Billing practices of UHP and third party billing companies are not relevant." *See* Order entered October 18, 2011. In her Motion for New Trial, Plaintiff alleged that the Court reversed its prior ruling and held that Ms. Slager was barred from offering any

testimony (1) on the billing code used by Ms. Hackney and (2) how that billing code related to the services provided and/or not provided to Sara Bryanne Coleman.

The Defendants responded, first, that billing was a function performed by United Health Professionals, Inc., an entity that was not a party to the action, and as such not relevant to any issue that was being litigated at Trial. Second, Defendants asserted that Ms. Slager failed to meet the prerequisites to offer any expert opinion in a medical professional negligence action on the subject of medical coding, pursuant to W.Va. Code 55-7B-7.

The Court finds that it properly excluded Ms. Slager from testifying as to any alleged billing irregularity at United Health Professionals, Inc. and that such does not constitute a basis upon which a new trial should be granted for two (2) reasons. First, Ms. Coleman failed to demonstrate how the exclusion of Ms. Slager's testimony on that issue constituted prejudicial error given that Ms. Slager went through the medical records in extreme detail, including what had actually occurred, and what, in her opinion, should have occurred during the care and treatment of Sara Bryanne Coleman. Second, the Court reiterates its earlier ruling that the billing done by a non-party (United Health Professionals, Inc.) was not relevant to the standard of care.

### d. Defendants' Juror Strikes

During jury selection, both Plaintiff and the Defendants were permitted to strike two jurors following *voir dire*. The Defendants attempted to strike Mr. Mitchell Turner and Mr. Thomas Lindsey, both African-Americans. Plaintiff's counsel asserted the strikes were race-based and a denial of equal protection under the law. The Court inquired of defense counsel and asked it to state the reasons for striking the two African-American jurors. Defendants responded that neither Mr. Turner nor Mr. Lindsey produced any responses that were meaningful to questions asked during *voir dire*, and that there was little information gleaned during that process about either Mr. Turner or

Mr. Lindsay for defense counsel to have confidence that they would fairly try the case. Further, defense counsel stated that Mr. Turner was overweight, like Sara Bryanne Coleman and thus could take offense to comments concerning weight issues and further, he had a young child, which might be harmful to the defense in his consideration of the case. As to Mr. Lindsey, defense counsel advised that he was stricken because he had two children, one of whom was 17, and the loss of 18 year old Sara Bryanne Coleman would have had a negative impact or personalization of those facts.

Counsel for Ms. Coleman objected that the reasons given for the Defendants' strikes were pretextual in nature because one of the female white jurors, Kathy Spurlock, was also identified as being overweight, and that several jurors had children. Also, another potential juror, Mr. Darrell Anderson, did not respond to many questions at all. Defense counsel replied that Mr. Anderson was struck by Ms. Coleman, and that the Defendants had considered striking him themselves.

The Court ultimately ruled that the Defendants could keep one strike, and change one strike. The Court recognized that the existing case law did not address the reversal of peremptory strikes based upon the race of counsel. In this case, the Court's ruling led to Mr. Turner remaining on the jury. The Defendants objected to the ruling and moved for a mistrial. Defendants stated that much of their deliberation in regards to strikes was to preserve other jurors on the final jury and not have them become alternatives. (As is the procedure in this Court, the Court randomly selects jurors to be alternatives by selecting numbers or numbers for jurors at the pretrial, and without having any knowledge of who would even be on the jury or in what order they would be called to the box.)

Ms. Coleman argued the Court's ruling that one strike would be permitted to stand was prejudicial error because it constituted a violation of the Equal Protection Clause. "It is a violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States and Article III, Section 10, of the Constitution of West Virginia for a party in a civil action to

purposefully eliminate potential jurors from a jury through the use of peremptory strikes solely upon the basis of gender or race." *Parham v. Horace Mann, Ins. Co.*, 200 W.Va. 609, 490 S.E.2d 696 (1997).

The Defendants responded that Ms. Coleman's argument was procedurally defective and substantively without merit, and to the extent any party was prejudiced by the Court's ruling, it was the Defendants whose peremptory strike was reversed without a factual or legal basis. To make the record clear, Ms. Coleman and her family are Caucasian, while all three of her counsel, Dwight Staples, Gail Henderson-Staples, and Franklin Long are African-American. Ms. Coleman argued that this Court determined that the strike was based on race, but allowed another strike to stand.

The standard for review of peremptory strikes is set forth in the U.S. Supreme Court decision, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d (1986): "To prove a violation of equal protection, the analytical framework established involves three steps. First, there must be a prima facie case of improper discrimination. Second, if a prima facie case is shown, the striking party must offer a neutral explanation for making the strike. Third, if a neutral explanation is given, the trial court must determine whether the opponent of the strike has proved purposeful discrimination. So long as the reasons given in step two are facially valid, the explanation for the strike need not be persuasive or plausible. The persuasiveness of the explanation does not become relevant until the third step when the trial court determines whether the opponent of the strike has carried the burden of proving purposeful discrimination."

While this Court's decision to reverse one, but not both, of the Defendants' peremptory strikes is without direct precedent, this Court finds that it followed the parameters enumerated in

*Batson v. Kentucky* and did not violate Ms. Coleman's rights under the Equal Protection Clause of the U.S. Constitution.

The Court, pursuant to step one of the *Batson* analysis, found that there was a prima facie case of improper strikes, and required the Defendants to provide a race-neutral explanation pursuant to step two. The Court found there were non-pretextual reasons for the strikes, including designation of alternates. The Court next found that Ms. Coleman did not prove purposeful discrimination. While the Court did not expressly state on the Trial record that there was no purposeful discrimination on the part of the Defendants, that was the implication and intent when the Court did not reverse both of the Defendants' peremptory strikes.

"When a peremptory strike is challenged, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts, from the opponent of the strike." Syl. Pt. 2, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d (1986). Further, both parties have asserted that the Court's ruling was in error and thus, this Court does not find that it was prejudicial error to allow one of the Defendants' strikes to stand when the Defendants were, in fact, able to provide a race-neutral explanation for their peremptory strikes. The Defendants were the only party who objected and moved for mistrial at the time of the ruling. Additionally, this Court notes that defense counsel have practiced before this Court for years and this Court does not believe that they would purposefully racially discriminate.

### e. The Application of W.Va. Code §55-7-23.

Ms. Coleman alleges that it was prejudicial error to apply West Virginia Code §55-7-23 to the case at bar for three (3) reasons: (1) it was error to apply the Code section retroactively; (2) it was an error to use W.Va. Code §55-723 as an affirmative defense; and (3) it was error to apply W.Va. Code §55-7-23 to the facts of this case.

W.Va. Code § 55-7-23 provides:

No health care provider, as defined in section two, article seven-b of this chapter, is liable to a patient or third party for injuries sustained as the result of the ingestion of a prescription drug or use of a medical device that was prescribed or used by the health care provider in accordance with the instructions approved by the United States Food and Drug Administration regarding the dosage and administration of the drug, the indications for which the drug should be taken or device should be used, and the contraindications against taking the drug or using the device: Provided, that the provisions of this section shall not apply if: (1) the health care provider had actual knowledge that the drug or device was inherently unsafe for the purpose for which it was prescribed, used and (2) a manufacturer of such drug or changes in contraindications against taking the drug or using the device and the health care provider fails to follow such publicly announced changes and such failure proximately caused or contributed to the plaintiff's injuries or damages.

The Defendants responded to these arguments with ten pages of opposition. The Defendants asserted that they were entitled to immunity from liability for the prescription of Lo Ovral and/or Ovcon 50. Defendants also argued that there was no evidence that the Jury ever considered the immunity issue because Verdict Form indicated that prior thereto, the Jury found that the Defendants met the applicable standard of care. This Court therefore reaffirms its previous ruling that W.Va. Code §55-7-23 was properly applied to the case at bar.

The Defendants' Motion for Directed Verdict was heard on November 8, 2011. The Defendants filed the Motion November 3, 2011, and Ms. Coleman responded November 7, 2011. Even assuming *arguendo* that the application of W.Va. Code §55-7-23 constituted an error, the application of W.Va. Code §55-7-23 was not prejudicial to Plaintiff for the following reasons. First, there was no mention of immunity during the examination of any witness, nor was there any mention during closing arguments. Second, neither immunity nor W.Va. Code 55-7-23 was mentioned on the Verdict Form. Third, the Jury never considered the immunity issue because it found as a preliminary matter that both the Defendants met the standard of care. As set forth in Syl. Pt. 3 of *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995) (quoting from Syl.Pt.7, *Starcher v. South Penn Oil Co.*, W.Va. 587, 95 S.E.2d 28 (1918)). "A judgment will not

be reversed because of an admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby." Therefore, the application of W.Va. Code §55-7-23 does not constitute a basis upon which a new trial should be granted.

### f. Spoliation of the Ovcon 50

During the pretrial held July 1, 2010, the Court ruled on the Defendants' Motion for a Spoliation Instruction as to the Ovcon 50, Neurontin prescription bottle, and the trampoline which Sara Bryanne Coleman was allegedly injured on prior to her death. The Court denied the Motion as to the Neurontin and the trampoline, but granted the Motion as to Ovcon 50.

Ms. Coleman argued that the Court's evaluation of the evidence was flawed because (1) the Court incorrectly ruled that Ms. Coleman had control and ownership of the Ovcon 50 as opposed to Sara Bryanne Coleman; (2) the Court blamed Ms. Coleman for her failure to recognize and anticipate evidence needed for litigation that was filed two years later; (3) the Court incorrectly found that Ms. Coleman destroyed the Ovcon 50; and (4) the Court, without basis, found that an empty package would have been retained by the decedent and kept in the ownership and possession of Ms. Coleman.

The West Virginia Supreme Court of Appeals set forth the standard for spoliation instructions in Syl.Pt.2, *Tracey v. Cottrill*, 206 W.Va. 363, 524 S.E.2d 879 (1999):

> We hold that before a trial court may give an adverse inference jury instruction or impose other sanctions against a party for spoliation of evidence, the following factors must be considered: (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence.

On July 1, 2010, the Court made findings on the evidence, and found that the Defendants were entitled to a spoliation instruction with regard to the packet of Ovcon 50. Pursuant to the

factors set forth in *Tracy*, the Court first found that Ms. Coleman had possession and control of the Ovcon 50. Ms. Coleman, and the entire Coleman family who testified, testified that Sara Bryanne Coleman lived at home with her mother, Theresa Coleman, during the time frame in question, April 2004 through August 2004. Second, Ms. Coleman was aware that Sara Bryanne Coleman was on birth control pills. Third, Ms. Coleman was able to produce other relevant medications in the case, such as the sample pack of Lo Ovral and Augmentin. Based upon the foregoing, there is no evidence to contradict the Court's finding that Ms. Coleman had control and possession of the Ovcon 50. Furthermore, during the discovery process, Theresa Coleman reported through her counsel that she did, in fact, have the Ovcon 50.

With regard to the second *Tracy* factor concerning prejudice to the Defendants, the Court found that the Defendants were substantially prejudiced without the evidence because the Plaintiff's claim centered on Sara Bryanne's ingestion of birth control and how it contributed to her death. This Court made the foregoing finding during the July 1, 2012 pretrial conference. Once the Trial commenced, the prejudice to the Defendants became even more apparent.

A key component to the defense was that Ms. Hackney only gave Sara Bryanne Coleman one packet of Ovcon 50. As a result, the Defendants asserted that Sara Bryanne was no longer on Ovcon 50 at the time of her death, and had not been on the medication for a month. Further, the Defendants received new information on this issue during the Trial. Ms. Coleman, at Trial, testified that she was not aware until after Sara Bryanne Coleman's death that her daughter was on Ovcon 50, or that Ovcon 50 was a high dose estrogen birth control pill. The Court found that this would lead to the reasonableness of anticipating that this evidence would be needed for litigation.

Plaintiff also testified that almost "immediately" after the death of Sara Bryanne Coleman the family sought answers as to Sara's death and requested medical records by November 2004.

Plaintiff testified that she was opposed to Sara Bryanne taking birth control pills because her family had "something wrong with our blood" and that Plaintiff strenuously objected to Ms. Hackney giving Sara Bryanne birth control. Plaintiff further testified that "immediately" after birth control was brought up by her daughter and Ms. Hackney on April 8, 2004, she "started thinking about DVTs and the blood clots, and you're not supposed -- it increases the risk, if you take birth control pills." All of the foregoing contributed to this Court's conclusion that the third *Tracy* factor was met in that it was reasonable for Plaintiff to anticipate the need for the Ovcon 50 during litigation, despite the action not being filed immediately.

The fourth *Tracy* factor required an analysis of Ms. Coleman's degree of fault in the destruction of the evidence. First, Plaintiff admitted during her deposition that she threw some things away after Sara Bryanne Coleman's death. Plaintiff also testified to this during Trial that she threw items away, including medications. Second, there was no other explanation as to what happened to the pills after Sara Bryanne's death. Third, Ms. Coleman testified that she was unaware Sara Bryanne was taking Ovcon 50 until she found the pills after Sara Bryanne's death. Fourth, as mentioned above, Plaintiff kept an unused package of Lo Ovral despite the fact that no one in the Coleman household took birth control, and kept the bottle of Augmentin. Fifth, according to Ms. Coleman, Sara Bryanne was on birth control when she died, so the package would not have been empty, according to her testimony. Based upon the foregoing, the weight of the evidence weighed heavily in favor this Court's finding in favor of the Defendants as to the spoliation of the Ovcon 50.

**g. The Jury Instructions Were Correct Statements of the Law of West Virginia.**

In addition to asserting that no spoliation instruction should have been read to the Jury, Ms. Coleman objected to the language of the instruction as given. Plaintiff asserted that it was not a

correct statement of the law, and contained arguments of the defense counsel. The instruction given is set forth on pages 6 and 7 of the Jury Charge, specifically paragraph (c).

As is the Court's custom and practice, each party was asked to submit proposed instructions prior to and at the end of Trial. The Court then utilized a standard medical professional liability Jury Charge, which was modified with the assistance of counsel, to fit the specifics of the case. The Court then discussed the approval of the submissions from each party. Both Ms. Coleman and Dr. Nutt and Ms. Hackney submitted proposed spoliation instructions.

"A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed to determine whether the charge, reviewed as a whole, sufficiently instructed the jury so that they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, as long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion." Syl.Pt.4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

While Ms. Coleman was not satisfied with the Defendants' proposed instruction, which became the instruction read by the Court, it was a proper instruction. The instruction was a correct statement of the law. Further, even assuming *arguendo* that such an instruction was improper, the Court finds that the instruction constituted harmless error, as the Jury never reached this issue on the Verdict Form. Instead, the jury found that both Defendants met the applicable standard of care. Therefore, based upon the foregoing, the spoliation instruction set forth in the Jury Charge did not constitute a basis upon which a new trial should be granted in this matter.

### h. Summary Judgment on Behalf of Defendant, Dr. Allan Chamberlain was Proper.

The Court granted summary judgment to Dr. Allan Chamberlain at the original pretrial of July 1, 2010. Dr. Chamberlain was another physician at United Health Professionals, Inc. at all times relevant to this matter.

Ms. Coleman originally asserted in this litigation that Dr. Chamberlain was the collaborating physician with Nurse Hackney. Ms. Coleman argued that it was error for the Court to grant summary judgment, and the Court ignored the summary judgment standard by (1) ignoring medical records, and (2) ignoring the opinion of Plaintiff's gynecology experts, Dr. Eisinger and Dr. Koren. Defendants responded that this argument (1) is procedurally barred and (2) substantially without merit.

First, Defendant argued that a Motion for a New Trial is an improper procedural vehicle, and that West Virginia Rule of Civil Procedure 59(e) provides the proper procedure. Further, Defendants assert that a motion under Rule 59(e) should have been filed no later than ten (10) days after the entry of judgment. While the pretrial was held July 1, 2010, the Order was not entered until October 18, 2011. Thus, the motion should have been filed no later than November 1, 2011, which Plaintiff failed to do, along with a Notice of Appeal. The Court finds that Ms. Coleman did not follow the procedural steps properly to preserve the issue pursuant to Rule 59(e).

However, even if this Motion were not procedurally deficient, the Court further finds that the summary judgment was appropriate. There was no evidence to support Ms. Coleman's theory of causation. Dr. Chamberlain's consultation in this case concerned the interpretation of an ultrasound, and there were no allegations that the ultrasound interpretation was negligent. Dr. Nutt was Ms. Hackney's supervising physician, and was the doctor who approved the treatment plan for

Sara Bryanne Coleman. Thus, without a showing of causation, summary judgment was appropriate. No evidence at trial contradicted the Court's pretrial analysis. There existed no genuine issues of material fact with regard to whether Dr. Chamberlain violated the applicable standard of care or whether such a violation of the standard of care was a proximate cause of Sara Bryanne Coleman's death.

### i. The Court Properly Excluded Evidence of a "Missing Family History Form."

At the original pretrial conference July 1, 2010, the Defendants filed a Motion in Limine to Exclude Reference by the Plaintiff's counsel and/or witnesses to a "missing family history form." Ms. Coleman alleged that on April 8, 2004, she filled out a family history form for Sara Bryanne, and that the Defendants then removed the form from Sara Bryanne's United Health Professionals, Inc. file after her death. Ms. Coleman asserts that she not only saw the form, but helped fill it out. The Defendants have denied the existence of this form.

Ms. Coleman asserted that the form is relevant and the Court usurped the role of the Jury in deciding this factual question. At the beginning of the Trial, Ms. Coleman sought to revisit the issue by Motion. This Court declined to hear the issue, stating (1) the motion was not timely filed, as it should have been set for the pretrial conference, and (2) it implied that this Court had not fully and completely considered the matter in 2010, since there was no new information in the motion.

In its original pretrial ruling on July 1, 2010, this Court properly excluded the alleged missing family history form from being introduced into evidence. First, Ms. Coleman could not describe anything about the alleged form, other than that she wrote the words: "Family blood history of clotting, DVTs, and pulmonary emboli" and put a large asterisk by it because it was "important." When Plaintiff vouched the record at Trial, she testified that the form was two pages,

but could not recall whether it was two sheets of paper, or a front and back paper. Second, there was no evidence that Ms. Coleman completed the family history form. Third, the Defendants stated that at the time Sara Bryanne Coleman was a patient at United Health Professionals, Inc., the practice did not have a family history form, nor did the Defendants. Ms. Coleman alleged that Shellie Booten, a part-time file clerk at United Health Professionals, Inc. would have testified that there was a family history form, but no other employee, including doctors, nurses, and other office staff, including the office manager, had corroborated this information. There was never any evidence to substantiate the allegation. Fourth, Ms. Hackney admitted that she was already aware of the family history of blood clots. Neither Ms. Hackney nor Dr. Nutt denied knowing of (1) Josephine Coleman's medical history, including a reported blood clot, (2) that Josephine Coleman was Sara Bryanne Coleman's paternal grandmother and a patient of Ms. Hackney's, and (3) Ms. Coleman's previous blood clot issue. The parties just disagreed as to the importance of the family history in Sara Bryanne Coleman treatment and care, and whether the family's clotting issues were genetic. Therefore, for all of the foregoing reasons, the Court properly excluded evidence of the alleged "missing family history form" and the same does not constitute a basis upon which a new trial should be awarded.

j. **The Court Properly Excluded Plaintiff's Attempt to Cross-Examine Dr. David Ayers as an Expert Witness.**

Dr. David Ayers was Sara Bryanne Coleman's family practice physician. As Dr. Ayers no longer practices in West Virginia, the parties took his evidentiary video deposition in Tennessee on July 7, 2010. The parties then presented a redacted version of the deposition to the Jury on November 10, 2011. Ms. Coleman alleged that it was error for the Court to rule that Dr. David Ayers was qualified as a medical doctor who could testify concerning his medical treatment of Sara Bryanne Coleman as a lay witness, but that Ms. Coleman could not cross-examine him as an expert witness.

The Defendants asserted that Ms. Coleman has mischaracterized the facts and legal issues presented, and the Court agrees. First, Dr. Ayers testified that he had no knowledge of the care by the Defendants and had no expert opinions regarding the matters in dispute. He specifically testified that he had reviewed no medical records for his deposition other than his own, and that he was not there to testify concerning the Defendants.

Second, Ms. Coleman, during her cross-examination, attempted to ask Dr. Ayers about causation issues. During this questioning, the Plaintiff's counsel repeatedly asked Dr. Ayers to read into the record excerpts of the discovery deposition of Dr. James Kaplan, the Chief Medical Examiner for the state of West Virginia. The Court held that under *Rine v. Irisari*, 187 W.Va. 550, 420 S.E.2d 541 (1992), that this was improper. In *Rine*, the appellants objected to the use of a deposition of a non-witness, non-party who was available to testify. The Court in *Rine* held that "as a condition precedent to the admissibility of former testimony under W.Va.R.Evid. 804(b)(1), the proponent of such testimony must show the unavailability of the witness. If the witness is available, the in-court testimony of that witness is preferred." *Id.* at 557, 548.

In this case, Dr. Kaplan was available to testify, and did, in fact, testify during the Trial. Thus, it was proper to limit the testimony of Dr. Ayers. Ms. Coleman was not prejudiced by the Court's limiting her questioning upon the deposition testimony of Dr. Kaplan, as she presented multiple expert witnesses and cross-examined Defendants' experts. Further, even if it were error to disallow part of Dr. Ayers' testimony, it was harmless error because the testimony in question was primarily Dr. Ayers reading part of Dr. Kaplan's deposition into the record. Given that Dr. Kaplan actually testified at trial, Ms. Coleman was able to elicit all relevant pathology evidence from him, her other experts, or during the cross-examination of the Defendants' witnesses.

Therefore, for all of the foregoing reasons, the Court properly limited the cross-examination of Dr. David Ayers and the same does not constitute a basis upon which a new trial should be awarded.

### k. The Plain Error Doctrine is Inapplicable to the Jury Verdict.

In her Motion for New Trial, Ms. Coleman argued that the jury verdict was plain error that affected her substantive rights and seriously affected the fairness, integrity, and public reputation of the judicial proceedings.

"To trigger application of the plain error doctrine, there must be (1) an error, (2) that it is plain, (3) that it affects the substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). The Defendants responded that the plain error doctrine is not part of the standard for granting a new trial. Instead, the Defendants argued that plain error applies only to unpreserved errors which "seriously affect the fairness, integrity or public reputation of judicial proceedings." The Court does not find that the jury verdict was plain error that affected the substantial rights of Ms. Coleman. The Court assumes that Ms. Coleman is asserting that the previous objections are what constitute plain error. As this Court finds against Ms. Coleman on all of those allegations, it does not find that the jury verdict was plain error. Further, the Court agrees with the Defendants that plain error is not an appropriate vehicle for this Motion. The plain error doctrine applies to allow a party appellate review when the party failed to object in a lower court. If this is the doctrine Ms. Coleman intended, it is unclear which alleged errors she is objecting to that were not preserved at Trial.

### l. The Jury Verdict Did Not Constitute a Miscarriage of Justice

In her Motion for New Trial, Ms. Coleman asserted that based on all of the previous allegations of error, the jury verdict was a gross miscarriage of justice. She argued "A jury is not

{F0468181.4 }

infallible and there are circumstances in which its verdict should be set aside." *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1985). The Defendants responded that the verdict was entitled to deference and should not be disturbed absent compelling reasons, which are completely absent here. Further, Defendants asserted that the Jury heard weeks of testimony, and yet took less than two (2) hours to determine that the Defendants met the standard of care with regard to Sara Bryanne Coleman.

This Court finds that the Jury Verdict following this Trial was not a gross miscarriage of justice and that errors, if any, were harmless. The Verdict shall stand. "A new trial should rarely be granted and then granted only where it is reasonably clear that the prejudicial error has crept into the record or that substantial justice has not been done." *Smith v. Cross*, 223 W.Va. 422, 427, 675 S.E.2d 898, 903 (2009). The Court further finds that according to the weight of the evidence substantial justice was done, and does not find that prejudicial error was committed. The Defendants are entitled to every inference as the prevailing party.

In addition, the Defendants presented ten (10) witnesses, including seven (7) medical experts, to testify as to their theory of the case, principally that both Defendants met the standard of care. In light of all inferences in favor of the Defendants, the strength of the Defendant's witnesses, and the speed of the deliberations, this Court does not find that the verdict was a gross miscarriage of justice, as there was substantial support for the same. The Court comes to this ruling after careful deliberation of the parties' motions, the cited cases, the Court's recollection and review of over 230 pages of notes taken by the Court, including the evidence presented and the witnesses. The Court also considered the demeanor of a number of witnesses, and this Court's observation and notes during the Trial as to when and how many jurors were taking notes, and when and how many jurors were seemingly worn down.

Ms. Coleman's Motion for New Trial is therefore DENIED, this jury delivered, in the Court's opinion, in fact, justice under the facts and circumstances and the evidence in this case. Ultimately, in a case that started in 2004, a trial that lasted more than three weeks, and it was highly contentious on a regular basis. It's already been to the West Virginia Supreme Court of Appeals, and contains more than 36 circuit court volumes that may -- and in that there may be mistakes made, the Court thinks it's inevitable. However, the Court finds that this action was well-litigated by both sides. The errors, if any, were not prejudicial and they did not affect the outcome of this trial. The Court has no question that it was a fair and impartial jury, that it was properly instructed and came to a verdict that reflected the witnesses' testimony and the evidence presented, and the Court will not overturn such a verdict. "When a case involving conflicting testimony and circumstances has been fairly tried, under the proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894 (1958).

For all of the foregoing reasons, Plaintiff's Motion for New Trial is hereby DENIED in its entirety and the Jury Verdict of November 15, 2011 will not be set aside.

## MOTION ON BEHALF OF DEFENDANTS, PATRICIA HACKNEY, CNM AND MITCHELL NUTT, M.D. TO CONDUCT JUROR INTERVIEWS/PLAINTIFF'S MOTION TO ALLOW JUROR INTERVIEWS

On December 29, 2011, the Defendants filed a Motion to Conduct Juror Interviews and submitted a proposed Order granting the same. Thereafter on January 4, 2012, Plaintiff filed her own Motion to Allow Juror Interviews. It is this Court's custom and practice to request that jurors keep all deliberations confidential and to respect the privacy of each juror throughout the Trial process. As a result, the Court hereby DENIES both the Defendants' Motion to Conduct Juror

{F0468181.4}

Interviews and the Plaintiff's Motion to Allow Juror Interviews. However, this Court also acknowledges that despite the foregoing ruling, the Court is aware of no authority which would prohibit the parties from communicating with members of the jury now that their term of court has ended.

Each Party's exceptions and objections to the rulings set forth above are noted and preserved.

The Clerk of the Court is directed to send certified copies of this Order upon its entry to the following counsel of record:

Michael J. Farrell, Esquire
Tamela J. White, Esquire
Allison Carroll Anderson, Esquire
Farrell, White & Legg, PLLC
P.O. Box 6457
Huntington, WV 25772-7457
*Counsel for Mitchell Nutt, M.D.,*
*and Patricia (Patti) Hackney, CNM, RN*

Gail Henderson-Staples, Esquire
Dwight J. Staples, Esquire
Henderson, Henderson & Staples, LC
711½ 5th Avenue
Huntington, WV 25701
*Co-Counsel for Plaintiff, Theresa Coleman,*
*Administratrix of the Estate of*
*Sara Bryanne Coleman*

J. Franklin Long, Esquire
Law Offices of J. Franklin Long
727 Bland Street
Bluefield, WV 24701
*Co-Counsel for Plaintiff, Theresa Coleman,*
*Administratrix of the Estate of*
*Sara Bryanne Coleman*

Entered this 20th day of April, 2012.

_____
HONORABLE DAVID M. PANCAKE

STATE OF WEST VIRGINIA
COUNTY OF CABELL
I, ADELL CHANDLER, CLERK OF THE CIRCUIT COURT FOR THE COUNTY AND STATE AFORESAID DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY FROM THE RECORDS OF SAID COURT ENTERED ON _____ APR 20 2012
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS _____
_____ Chandler ___ APR 20 2012 CLERK
CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

**Prepared by:**

_____

Michael J. Farrell, Esquire (WVSB #1168)
Tamela J. White, Esquire (WVSB# 6392)
Allison Carroll Anderson, Esquire (WVSB#10294)
Farrell, White & Legg PLLC
P.O. Box 6457
Huntington, WV 25772-7457
*Counsel for Mitchell Nutt, M.D. and*
*Patricia (Patti) Hackney, CNM, RN.*

**Approved** AS TO FORM:

_____

Gail Henderson-Staples, Esquire (WVSB# 1676)
Dwight J. Staples, Esquire (WVSB# 3566)
Henderson, Henderson & Staples, LC
711½ 5th Avenue
Huntington, WV 25701
*Co-Counsel for Plaintiff, Theresa Coleman,*
*Administratrix of the Estate of*
*Sara Bryanne Coleman*

_____

J. Franklin Long, Esquire (WVSB# 2237)
Law Offices of J. Franklin Long
727 Bland Street
Bluefield, WV 24701
*Co-Counsel for Plaintiff, Theresa Coleman,*
*Administratrix of the Estate of*
*Sara Bryanne Coleman*